UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| MARCIA PLAMBECK, | ) | CIV. 11-5054-JLV |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | **GRANTING IN PART AND** |
| THE KROGER CO.; COMMUNITY | ) | **DENYING IN PART** |
| INSURANCE COMPANY, d/b/a | ) | **DEFENDANTS' MOTION** |
| ANTHEM BLUE CROSS AND BLUE | ) | **FOR PROTECTIVE ORDER** |
| SHIELD; and ANTHEM UM | ) | [DOCKET NO. 14] |
| SERVICES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## INTRODUCTION

This matter is before the court on plaintiff Marcia Plambeck's complaint alleging that defendants violated the Employee Retirement Income Security Act of 1974 ("ERISA") by refusing to provide benefits in connection with a medical procedure performed on her. See Docket No. 19, Amended Complaint. Pending before the court is a motion for protective order by defendants. See Docket No. 14. The district court, the Honorable Jeffrey L. Viken, referred this matter to this magistrate judge for decision pursuant to 28 U.S.C. § 636(b)(1)(A).

## FACTS

The facts which are pertinent to the pending motion are as follows. The facts set forth are from Ms. Plambeck's complaint unless otherwise indicated.

Ms. Plambeck was a beneficiary of a self-funded health insurance plan provided by her husband's employer, Loaf 'N Jug, a division of The Kroger Co. Suffering from lower back pain, Ms. Plambeck consulted with the Laser Spine Institute, LLC ("LSI") for treatment.   LSI recommended surgery for thermal ablation to destroy certain facet joints in Ms. Plambeck's spine.

Ms. Plambeck alleges that she contacted defendants to pre-verify coverage prior to submitting to the surgery.  Ms. Plambeck alleges that LSI also contacted defendants to pre-verify coverage prior to the surgery.  LSI provided defendants with the "CPT" codes it would use when billing for the surgery it contemplated doing on Ms. Plambeck.

Defendants allegedly told Ms. Plambeck that they would cover the surgery, and that her out-of-pocket expense in connection with the procedure would be $6,000.  Ms. Plambeck relied on this information in deciding to undergo the surgery, borrowing the $30,000 required to pay for the surgery up front.  Defendants deny that either Ms. Plambeck or LSI obtained precertification for the procedure prior to the surgery.

After the surgery was performed, defendants refused to pay for the surgery, deeming the surgery not medically necessary or experimental/investigational.  Ms. Plambeck exhausted her administrative

appeals with regard to this decision and then brought this action.[1]  She asserts the equitable claim of estoppel, invoking § 502(a)(3) of ERISA, based on the pre-surgery representations made by defendants regarding whether the costs of the surgery would be paid for by their health insurance plan.  Defendants characterize Ms. Plambeck's complaint as seeking relief under state law, and assert that all state law claims are preempted by ERISA.

The present motion presents a case of "dueling" protective orders. Defendants have attempted to obtain Ms. Plambeck's agreement to their proposed protective order, arguing that the terms of its proposal are required by the Health Insurance Portability and Accountability Act of 1996, Public Law 104-191 ("HIPAA").  See Docket No. 14-1.  Ms. Plambeck refuses to agree to the form of protective order suggested by defendants and instead asserts that her own authorization to defendants for disclosure of health information or records is sufficient.  See Docket No. 20-1.  Thus, defendants' motion requires the court to examine the requirements of HIPAA in this context.

---

[1]Defendants deny that Ms. Plambeck pursued any appeal as to The Kroger Company.

## DISCUSSION

**A.    The Parties' Proposed Documents**

    **1.    Ms. Plambeck's Authorization**

Ms. Plambeck's proposed authorization allows defendants to disclose to her lawyers alone any portions of her health information or records.  See Docket No. 20-1.  The information covered by Ms. Plambeck's authorization includes, but is not limited to, her entire hospital chart, any pharmacy or prescription records, any physician's chart, all diagnostic tests and imaging studies, any physical or occupational therapy records, all chiropractic records, any emergency medical records, and all billing records related to any of these categories.  Id.

Ms. Plambeck's authorization, however, would specifically forbid defendants from further disclosing any of her health information or records to any other legal counsel, to any insurance adjustor, or to any other person unless a separate authorization for disclosure to one of these other persons is signed by Ms. Plambeck in accordance with HIPAA.  Id.

    **2.    Defendants' Proposed Protective Order**

Defendants' proposed protective order is much more extensive.  It allows any party or nonparty who produces, files, or testifies about "protected information" to designate such information "confidential."  See Docket No. 14-1.  The person who designates such information to be confidential is

charged with bearing all costs or expenses which are attributable to making the designation.  Id.

If a deposition is taken, the entire contents of the deposition are deemed to be "confidential" for 10 days following receipt of the transcript.  Id.  The parties or the deponents may designate pages of the transcript or exhibits used at the deposition to be "confidential."  Anything designated confidential must be sealed.  Any confidential document filed with the clerk of courts must be sealed and endorsed with a specific admonition.

Confidential documents may not be disclosed to any person except: (1) the court and trial jury; (2) counsel of record for the parties, their partners and employees; (3) retained experts for this litigation, whether retained to assist counsel only, or to testify; (4) representatives of any corporate party whose regular employment duties involve administering or supervising the party in this action or in connection with the underlying transactions which form the subject matter of the action; (5) witnesses who are scheduled to testify at deposition or at trial if necessary to their testimony; (6) employees of parties or third-party contractors involved in organizing, filing, coding, converting, storing, or retrieving data or designing programs for the handling of data connected with these actions, including in relation to computerized litigation support system; and (7) any person designated by the court in the interests of justice, with notice and an opportunity to be heard by each party.  Id.

5

After the litigation is concluded, all "confidential" documents must be returned to the party which produced them.  Id.  All copies, summaries, compilations or abstracts of confidential documents are to be destroyed or returned to the party which produced the confidential documents on which the summary is based.  Id.

If a party or nonparty designates a document as "confidential," any party may object to that designation and apply to the Court for a ruling as to whether the document is entitled to protection.  Id.  Sanctions under Fed. R. Civ. P. 37 are applicable for confidential designations that are without reasonable basis and for objections to a confidential designation that are likewise baseless.  Id.

**B.      Scope of Discovery in a Civil Case**

The scope of discovery is governed by Fed. R. Civ. P. 26.  The scope described by that rule is as follows:

> Unless otherwise limited by court order, the scope of discovery is as follows:  Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense–including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.  All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

See Fed. R. Civ. P. 26(b)(1).

6

This scope of discovery under subsection (b)(1) is limited by subsection

(b)(2)(C).  That subsection provides that:

> On motion or on its own, the court must limit the frequency or
> extent of discovery otherwise allowed by these rules or by local rule
> if it determines that:
>
>> (i) the discovery sought is unreasonably cumulative or
>> duplicative, or can be obtained from some other source that
>> is more convenient, less burdensome, or less expensive;
>>
>> (ii) the party seeking discovery has had ample opportunity to
>> obtain the information by discovery in the action; or
>>
>> (iii) the burden or expense of the proposed discovery
>> outweighs its likely benefit, considering the needs of the
>> case, the amount in controversy, the parties' resources, the
>> importance of the issues at stake in the action, and the
>> importance of the discovery in resolving the issues.

See Fed. R. Civ. P. 26(b)(2)(C).

A party may move for a protective order from discovery upon a

demonstration of good cause in order to protect themselves from annoyance,

embarrassment, oppression, or undue burden or expense.  See Fed. R. Civ. P.

26(c)(1).  If a motion for protective order is denied, the court may order that the

party provide or permit discovery.  Id. at (c)(2).  The court may award attorneys

fees and expenses in connection with a motion for protective order.  Id. at (c)(3);

Fed. R. Civ. P. 37(a)(5).

The scope of discovery under Rule 26(b) is extremely broad.  See 8

Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2007 (2d

ed. 1994) (hereinafter "Wright & Miller").   The reason for the broad scope of

discovery is that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.  To that end, either party may compel the other to disgorge whatever facts he has in his possession."  8 Wright & Miller, § 2007, 96 (quoting <u>Hickman v. Taylor</u>, 329 U.S. 495, 507-08, 67 S. Ct. 385, 392, 91 L. Ed. 2d 451 (1947)).  The Federal Rules distinguish between discoverability and admissibility of evidence.  <u>Id.</u> at 95; <u>see also</u> Fed. R. Civ. P. 26(b), 32, and 33.  Therefore, the rules of evidence assume the task of keeping out incompetent, unreliable, or prejudicial evidence at trial.  These considerations are not inherent barriers to discovery, however.

The advisory committee's note to the 2000 amendments to Rule 26(b)(1) provide guidance on how courts should define the scope of discovery in a particular case:

> Under the amended provisions, if there is an objection that discovery goes beyond material relevant to the parties' claims or defenses, the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action.  The good-cause standard warranting broader discovery is meant to be flexible.

> The Committee intends that the parties and the court focus on the actual claims and defenses involved in the action.  The dividing line between information relevant to the claims and defenses and that relevant only to the subject matter of the action cannot be defined with precision.  A variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action.  For example, other incidents of the same type, or involving the same product, could be properly discoverable under the revised standard. ... In each case, the determination whether such information is discoverable

8

because it is relevant to the claims or defenses depends on the circumstances of the pending action.

The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings. ... When judicial intervention is invoked, the actual scope of discovery should be determined according to the reasonable needs of the action.  The court may permit broader discovery in a particular case depending on the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested.

See Fed. R. Civ. P. 26(b)(1) advisory committee's note.

The same advisory committee's note further clarifies that information is discoverable only if it is relevant to the claims or defenses of the case or, upon a showing of good cause, to the subject matter of the case.  Id.  "Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings.  Relevancy ... encompass[es] 'any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.' " E.E.O.C. v. Woodmen of the World Life Ins. Society, 2007 WL 1217919 at *1 (D.Neb. March 15, 2007) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)).  The party seeking discovery must make a "threshold showing of relevance before production of information, which does not reasonably bear on the issues in the case, is required."  Id. (citing Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1993)).  "Mere speculation that information might be useful will not suffice;

9

litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." Id. (citing Cervantes v. Time, Inc., 464 F.2d 986, 994 (8th Cir. 1972)).

Discoverable information itself need not be admissible at trial; rather, "discovery of such material is permitted if reasonably calculated to lead to the discovery of admissible evidence." See Fed. R. Civ. P. 26(b)(1) advisory committee's note.

Once the requesting party has made a threshold showing of relevance, the burden shifts to the party resisting discovery to show specific facts demonstrating that the discovery is not relevant, how it is overly broad, burdensome, or oppressive, or why it is subject to protection. Penford Corp. v. National Union Fire Ins. Co., 265 F.R.D. 430, 433 (N.D. Iowa 2009); St. Paul Reinsurance Co. v. Commercial Financial Corp., 198 F.R.D. 508, 511 (N.D. Iowa 2000). The articulation of mere conclusory objections that something is "overly broad, burdensome, or oppressive," is insufficient to carry the resisting party's burden–that party must make a specific showing of reasons *why* the relevant discovery should not be had or should be protected. Cincinnati Ins. Co. v. Fine Home Managers, Inc., 2010 WL 2990118, *1 (E.D. Mo. 2010); Burns v. Imagine Films Entertainment, Inc., 164 F.R.D. 589, 593 (W.D.N.Y. 1996).

**C.      Provisions of HIPAA and Applicability to This Action**

The court notes that Ms. Plambeck's medical records are clearly discoverable.  The question of the relevancy of Ms. Plambeck's medical condition and the nature of the medical procedure she underwent is not completely clear-cut.  On the one hand, Ms. Plambeck's claim as she has currently pleaded it is simply based on what defendants *told her* prior to the surgery.  Thus, the details of her medical condition and the details of the procedure she had are not strictly relevant.  Ms. Plambeck is *not* affirmatively asserting that her condition and her surgery are covered under defendants' health care policy.

However, relevancy is not that strictly construed at the discovery stage. Ms. Plambeck's medical records, once revealed, may make her version of the facts or defendants' version of the facts more likely or less likely.  They may contain direct evidence of defendants' decision-making process in the form of hand-written notations and sticky-notes appended thereto.

Ms. Plambeck's outstanding discovery requests are, basically, requesting defendants' claims file so that she may search out any evidence that would tend to prove that defendants did tell her prior to surgery that the procedure would be covered.  Defendants' claims file necessarily will contain copies of her medical records that were submitted in order to attempt to obtain defendants' payment of expenses in association with her surgery.

11

Furthermore, it is conceivable that, in order to present a fair defense, defendants may need to make reference to these medical records.  For example, defendants  may assert that they did make some pre-surgery representation to Ms. Plambeck about coverage, but allege that the coverage was conditioned on the assumption of certain facts about Ms. Plambeck's medical condition or the proposed surgery.  Defendants may assert that when they later found out that these assumed facts were not in existence, they properly denied coverage.  Such a defense would require that defendants be allowed to discuss facts regarding Ms. Plambeck's medical condition and surgery–facts that are documented in her medical records.  It would be unfair to deny defendants access to and the use of these documents as Ms. Plambeck's release would do.

It is the burden of the party seeking a protective order to demonstrate entitlement to such an order.  Cincinnati Ins. Co., 2010 WL 2990118, *1; Penford Corp., 265 F.R.D. at 433; St. Paul Reinsurance Co., 198 F.R.D. at 511; Burns, 164 F.R.D. at 593.  Here, it is defendants who seek the protection order.  Thus, they must show that (1) the documents in question are entitled to HIPAA protection and (2) the terms proposed in their protective order are required by HIPAA.

**1.     The Documents in Question are Entitled to HIPAA Protection**

The parties both agree that the documents in question that Ms. Plambeck seeks in discovery are covered by HIPAA.  HIPAA required,

12

among other things, that the Secretary of Health and Human Services promulgate regulations to protect the privacy of medical records. See 42 U.S.C. § 1320-d-2 Note. The Secretary then promulgated regulations setting forth the manner in which "protected health information" is produced, handled, disseminated, and disposed of.

The HIPAA regulations define "protected health information" to include "individually identifiable health information" which is held or transmitted by a "covered entity." 45 C.F.R. § 160.103. "Individually identifiable health information" is in turn defined to include information that relates to (a) an individual's past, present, or future physical or mental health or condition; (b) the provision of health care, or the payment for the provision of health care, to the individual. Id. Covered entities under the regulations include "a health plan," "a health care clearinghouse," and "a health care provider who tranmits any health information in electronic form. . ." 45 C.F.R. § 160.102(a). Thus, defendants are "covered entities" and Ms. Plambeck's medical records and medical bills contained in defendants' claims file are "protected health information." As such, HIPAA applies to defendants, and to their production of Ms. Plambeck's medical records in defendants' possession.

**2.    What Protection Terms are Required by HIPAA**

The real dispute between Ms. Plambeck and defendants is not *whether* HIPAA applies to the discovery requested, but rather what protections and

13

procedures are required by HIPAA in these circumstances.  Defendants rely on 45 C.F.R. § 160.512(e), which governs the disclosure of HIPAA-protected documents pursuant to judicial proceedings.

Section 160.512 allows a "covered entity" to disclose HIPAA-protected documents without the individual's written authorization in certain described situations.  See 45 C.F.R. § 164.512.  One such situation is where disclosure of HIPAA-protected documents is required by law.  See 45 C.F.R. § 164.512(a)(1). Where disclosure is required by law, the covered entity must disclose in accordance with subparagraphs (c), (e), or (f) of section 164.512.  Id. at (a)(2). Leaving aside the fact that the individual–Ms. Plambeck–*has* given written authorization to defendants to release her records to her and to her lawyers, the rules of discovery require disclosure, so disclosure is required by law.

Subparagraph (c) is inapplicable, addressing disclosures of information about victims of abuse or neglect.  See 45 C.F.R. § 164.512(c).  Subparagraph (f) is likewise inapplicable, addressing disclosures of information for law enforcement purposes.

Subparagraph (e) addresses disclosures for judicial proceedings.  Under subparagraph (e), a covered entity may disclose HIPAA-protected documents if ordered to do so by a court.  See 45 C.F.R. § 164.512(e)(1)(i).  In the absence of a court order, a covered entity may disclose HIPAA-protected documents in response to a discovery request if one of two conditions are met.  See 45 C.F.R.

14

§ 164.512(e)(1)(ii).  First, the disclosure may be made where the party requesting the information gives satisfactory assurances that it has made reasonable efforts to ensure that the individual whose records are being requested has notice of the request.  See 45 C.F.R. § 164.512(e)(1)(ii)(A). Alternatively, the "covered entity" may itself make reasonable efforts to notify the individual of the disclosure prospective to actual disclosure being made. See 45 C.F.R. § 164.512(e)(1)(vi).  This necessarily entails the situation where *a third party* is requesting medical records belonging to another.  It does not apply to the situation where an individual is requesting her own records–the regulation should not be read to require the individual to notify herself that she is making the request for her records.  Equally nonsensical is a reading that would require defendants to give Ms. Plambeck notice that it was about to disclose her medical records . . . to herself.

The second situation in which a covered entity may disclose HIPAA-protected documents in response to a discovery request and without a court order is where the party seeking the information gives the covered entity satisfactory assurances that reasonable efforts have been made by the party seeking the discovery to obtain a qualified protective order.  See 45 C.F.R. § 164.512(e)(1)(ii)(B).  "Satisfactory assurances" for purposes of this second described situation is met where the party seeking the discovery provides in writing proof that it (1) made a good faith attempt to notify the individual that

the requesting party is trying to obtain their records, (2) the notice to the individual contained sufficient information to allow the individual to interpose an objection to the discovery in the tribunal, and (3) the time for the individual to object has lapsed with no objection being made.   See 45 C.F.R. § 164.512(e)(1)(iii).  Again, this situation cannot be read to require Ms. Plambeck to provide to defendants a written statement that she notified herself that she was seeking her own medical records, that she gave herself enough information to object to the request, and that the time for objecting has lapsed without her interposing an objection.

The court concludes that section 160.512(e) clearly applies to the situation where, in litigation, a *third party* is requesting HIPAA-protected documents that do not belong to that third party:  hence the repeated references to the requirement that the requesting party give notice to the "individual"–-i.e. the person described in the HIPAA documents.  The regulations should not be read to require Ms. Plambeck to give notice to herself.

The requirements for a qualified protective order are also described in § 160.512.  A qualified protective order is an order that accomplishes two things.  First, it must prohibit the parties from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which such information was requested.   See 45 C.F.R.

16

§ 164.512(e)(1)(v).  Second, the order must require the return of the protected

health information (including all copies made) to the "covered entity" at the end

of the litigation or proceeding.  Id.

Ms. Plambeck argues that § 160.512 is inapplicable in this case because

she is the "individual" who is described in the medical records and the request

for those records is being made by her, not by a third party.  Ms. Plambeck

asserts that her request is governed by 45 C.F.R. § 164.524.  Section 164.524

provides that an individual has a right to access, inspect, and obtain copies of

their own "protected health information" for as long as a "covered entity"

maintains her records.  See 45 C.F.R. § 164.524(a)(1).  Exceptions are made for

psychotherapy notes, information compiled in reasonable anticipation of

litigation, and information subject to the Clinical Laboratory Improvements

Amendments of 1988.  In addition, records may be kept from the individual if

the covered entity is a penal institution, if the records were created in the

course of research, the records are covered by the Privacy Act, 5 U.S.C. § 552a,

or if the covered entity acquired the documents under a promise of

confidentiality that disclosure to the individual would violate.  45 C.F.R.

§ 160.524(a)(2).  Defendants do not invoke any of these exceptions to

Ms. Plambeck's request for her own records.

An individual making a request for her own medical records may be

required to do so in writing, if the covered entity chooses to make that a

requirement.  45 C.F.R. § 160.524(b)(1).  Once a covered entity receives a request from an individual for her own records, it must provide the records within 30 days if the records are stored on-site, and within 60 days if the records are stored off-site.  45 C.F.R. § 160.524(b)(2).  If some records are being provided and others are being withheld, the covered entity must specify this in writing to the individual upon producing the records and provide its explanation of the basis for the withholding of documents.  45 C.F.R. § 160.524(c), (d).

Here, it is clear that defendants' refusal to produce Ms. Plambeck's own records to her upon her own request is a violation of HIPAA.  Ms. Plambeck had a right to request her records, and she had a right to receive them within 60 days at the outside.  If defendants did not provide them, or any part of them, Ms. Plambeck had a right to a written statement of why they were not being provided.  Defendants must immediately provide to Ms. Plambeck her own records contained within their files.

Defendants' motion is really not directed at protections it needs under HIPAA before providing Ms. Plambeck with her own records.  Rather, it is defendants' attempt to get the court's permission, through a protective order, to use Ms. Plambeck's records for defendants' own purposes.  This Ms. Plambeck seeks to avoid.  The court concludes that she cannot avoid this, but neither may defendants insist on the terms of the protective order it has drafted.

18

Although not strictly relevant, because Ms. Plambeck is not invoking the terms of defendants' insurance policy directly, discussion of Ms. Plambeck's medical condition and the surgical procedure she underwent is unavoidable in this lawsuit.  Both parties agree that her medical records are covered by HIPAA.  Accordingly, a protective order is required.

The court will give the parties two choices.  The first option is that court will draft its own protective order and impose it involuntarily on the parties.  The order will embody four requirements:  the two HIPAA requirements for a qualified protective order as discussed above (see 45 C.F.R. § 160.512(e)(1)(v)); a requirement that the parties observe Fed. R. Civ. P. 5.2 and DSD LR 5.2 regarding redaction of any personal identifiers contained in these documents before disseminating, filing, or using any of these documents as exhibits; and a requirement placing the burden of demonstrating that a particular document is entitled to protection on the party seeking the protection.

The second option is that the parties may work together to draft a mutually-agreeable stipulated protective order and file it with the court to implement via order within 21 days of the date of this order.  Given that the parties' knowledge of their own case is vastly superior to the court's knowledge, the court strongly encourages the parties to embrace the second option in order to obtain the most appropriate protection order.  If the parties do not file a stipulated protective order within 21 days, or if they notify the court prior to

19

the expiration of 21 days that they are unable to reach agreed-upon terms for such an order, then the court will implement the first option.

## CONCLUSION

Good cause appearing, it is hereby

ORDERED that defendants are to immediately turn over to Ms. Plambeck any HIPAA-protected documents concerning her own medical condition and treatment that she has previously requested.  If defendants withhold any documents requested by Ms. Plambeck, they shall immediately inform Ms. Plambeck in writing in accordance with HIPAA of what documents were withheld and state the basis for withholding the documents.  It is further

ORDERED that, within 21 days from the date of this order, the parties file with the clerks a stipulated protection order or, in the alternative, notify this court that no stipulation could be agreed upon and upon receiving such notification, the court will enter its own protection order.

## NOTICE TO PARTIES

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law.  See Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained.  Id.  Failure to file timely objections will result in the

20

waiver of the right to appeal questions of fact.  Objections must be timely and specific in order to require review by the district court.

Dated February 27, 2012.

BY THE COURT:

/s/ *Veronica L. Duffy*
_____

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE