UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| MARCIA PLAMBECK, | ) | CIV. 11-5054-JLV |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER GRANTING |
| vs. | ) | DEFENDANTS' MOTION FOR |
| | ) | SUMMARY JUDGMENT |
| THE KROGER CO.; | ) | |
| COMMUNITY INSURANCE | ) | |
| COMPANY, d/b/a  ANTHEM BLUE | ) | |
| CROSS AND BLUE SHIELD; and | ) | |
| ANTHEM UM SERVICES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**INTRODUCTION**

Plaintiff Marcia Plambeck filed a complaint alleging The Kroger Co., Community Insurance Company, d/b/a Anthem Blue Cross and Blue Shield, and Anthem UM Services, Inc. (collectively referred to as "defendants") violated the Employment Retirement Income Security Act of 1974 ("ERISA") by refusing to provide benefits in connection with a medical procedure she underwent at the Laser Spine Institute, LLC ("LSI").  (Docket 19).

Pending before the court is defendants' motion for summary judgment. (Docket 30).  Based on the court's analysis, the defendants' motion for summary judgment is granted.

## MATERIAL FACTS

The Kroger Company ("Kroger") provided health coverage to Ms. Plambeck as a self-funded employee welfare benefit plan ("the Plan"). (Docket 31 at ¶ 1). Anthem Blue Cross Blue Shield ("Anthem") is the third-party administrator for Kroger under the benefit plan. Id. at ¶ 2. The Plan covers only those surgical procedures and related services that are determined to be medically necessary and not experimental or investigational as defined by the Plan. Id. at ¶ 3. The Plan permits Anthem to conduct a retrospective review to determine whether a particular surgical procedure and related services were medically necessary, even where pre-certification is not required. Id. at ¶ 4. Anthem's website provides healthcare providers guidance regarding circumstances under which certain procedures would or would not be medically necessary. Id. at ¶ 5.

Ms. Plambeck suffers from chronic back pain. Id. at ¶ 7. As a result of her condition, she contacted the Laser Spine Institute ("LSI") in 2008, after watching a TV advertisement, to see about the possibility of LSI performing surgery to alleviate her back pain. Id. LSI is a nationally advertised for-profit entity that markets and performs various types of laser surgery on a national basis. Id. at ¶ 6. LSI required Ms. Plambeck to deposit $30,000 of her own money before undergoing the procedure on her back. Id. at ¶ 8. LSI told Ms. Plambeck that it would pursue her health coverage payment and would take care of any necessary inquiries to verify coverage for the procedure under the Plan. Id. at ¶¶ 8-9.

Prior to Ms. Plambeck's surgery, a representative from LSI contacted Anthem and spoke with an Anthem customer service representative on two separate occasions. Id. at ¶ 10. The first call took place on June 3, 2008. Id. at ¶ 11. During the June 3, 2008, call, the LSI representative verified Ms. Plambeck had an active policy. (Docket 32-4). Once it was determined Ms. Plambeck's policy was active, LSI asked for information regarding out-of-network benefits for outpatient surgery. Id. The Anthem representative provided the following information to LSI in response:

> Showing the patient will be responsible for, let's see here, for both facility and physician, services for 80% of our contracted rate subject to a $5,000 deductible, showing zero satisfied toward that at this time. Patient has a $6,000 out-of pocket maximum and you would file all claims to your local Blue Cross and Blue Shield.

Id. This concluded the telephone call. Id. No mention was made of the particular surgery LSI planned to perform. Rather, the call verified the existence of coverage generally. (Docket 31 at ¶ 11). Following this call, LSI contacted Ms. Plambeck via e-mail and provided her with the following information:

> Your plan is active!! I verified the basic benefits of your plan, you have an out of pocket $6,000. This means that once we receive the $30,000 deposit on the procedure and file the claims with [A]nthem, any reimbursement we get back will go to you as reimbursement for payment you made to us. The $6k is what your policy deems you will pay for the procedure, if they reimburse the full amount be aware that you will [] get the money back except for the $6k.

(Docket 32-3 at p. 9).

LSI called Anthem again on June 30, 2008, the same day and just prior to Ms. Plambeck undergoing surgery at LSI. (Docket 31 at ¶¶ 11, 14). During the

3

June 30, 2008, call, the LSI representative again requested information on out-of-network benefits for Ms. Plambeck.  (Docket 32-4).  LSI provided three CPT codes to Anthem for the procedure Ms. Plambeck was to undergo.  With regard to the CPT codes, Anthem indicated:

> I am just checking our precertification list.  It does state that any surgical procedure does require medical necessity.  Let's see here . . . . the three CPT codes you gave me [are] not hitting our precertification list so it doesn't look like that is going to be needed.

Id. at p. 5.  LSI also confirmed with Anthem that Ms. Plambeck's policy had an out-of-network maximum of $6,000.  Id.  Ms. Plambeck underwent the laser surgical procedure.  (Docket 31 at ¶ 14).

Following Ms. Plambeck's surgery, which unfortunately was ineffective, LSI submitted a "Report of Medical Necessity" to Anthem.  Id. at ¶¶ 15-16.  Anthem asserts the report submitted by LSI supports its position that the procedure was not medically necessary.  Id. at ¶ 17.  Ms. Plambeck agrees the Plan language disagrees with the physician's assessment in the report but argues this is irrelevant to her claim.  (Docket 35 at ¶ 17).  Anthem denied coverage for Ms. Plambeck's surgery as not medically necessary.  (Docket 31 at ¶ 18).

On June 28, 2011, Ms. Plambeck filed a complaint against defendants, claiming she is entitled to equitable relief under ERISA § 502(a)(3).  (Docket 1).  Ms. Plambeck contends Anthem represented that her out-of-pocket expense for the surgery at LSI would be a maximum of $6,000.  Id.  Ms. Plambeck argues she detrimentally relied on this representation prior to undergoing surgery.  Id.

4

Ms. Plambeck, pleading the theory of equitable estoppel, argues defendants are prevented from asserting the treatment provided at LSI was not a covered medical expense under the Plan.  Id.  Ms. Plambeck contends under the theories of surcharge or unjust enrichment she is entitled to be "made whole" and to be put in the same position she would have been in had Anthem's representations regarding her out-of-pocket maximum been true.  Id.

## DISCUSSION

**A.    Summary Judgment Standard**

Under Fed. R. Civ. P. 56(a), a movant is entitled to summary judgment if the movant can "show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in the pleadings, but rather must produce affirmative evidence setting forth specific facts showing that a genuine issue of material fact exists.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  Only disputes over facts that might affect the outcome of the case under the governing substantive law will properly preclude summary judgment.  Id. at 248.  Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  Id. (emphasis in original).

5

If a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, then summary judgment is not appropriate. Id. However, the moving party is entitled to judgment as a matter of law if the nonmoving party has failed to "make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In such a case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

In determining whether summary judgment should issue, the facts and inferences from those facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). The key inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

**B.     Whether Ms. Plambeck is entitled to relief under § 502(a)(3) of ERISA.**[1]

Section 502(a)(3) authorizes a plan beneficiary, participant, or fiduciary to bring a civil action:

> (A) to enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of [ERISA] or the terms of the plan.

29 U.S.C. § 1132(a)(3).

Ms. Plambeck argues "[d]efendants, as fiduciaries, had an obligation to provide accurate and complete information when discussing coverage issues with [her]." (Docket 34 at pp. 9-10). Ms. Plambeck seeks an award of money damages for her economic and non-economic losses for medical expenses related to the surgery performed by LSI, which defendants determined was not covered by the Plan. (Docket 1). Ms. Plambeck contends requiring defendants to reimburse her for the surgical procedure, minus the $6,000 out-of-pocket maximum, constitutes "other appropriate equitable relief" within the meaning of § 502(a)(3).

Defendants argue Ms. Plambeck's claim is legal in nature and therefore precluded under § 502(a)(3) of ERISA. (Docket 33 at p. 9). Defendants contend

---

[1]Ms. Plambeck concedes the surgical procedure performed by LSI was not covered under the Plan and she admits her claim is not "brought pursuant to the [P]lan language." (Docket 34 at p. 3). A direct claim for plan benefits permitted under ERISA § 502(a)(1) which allows for a civil action to recover benefits "under the terms of [the] plan" would fail. 29 U.S.C. § 1132(a)(1)(B).

Ms. Plambeck's claim is not equitable in nature, but rather seeks to impose personal liability on defendants with the amount of her damages measured by what she paid to LSI for the surgical procedure. Id. at p. 10.

"Beneficiaries of ERISA plans may sue for breaches of fiduciary duties under 29 U.S.C. § 1132(a)(3), but the remedies they may seek in such an action are limited by the language of the statute or traditionally available equitable remedies." Calhoon v. Trans World Airlines, Inc., 400 F.3d 593, 596 (8th Cir. 2005). "The remedy of restitution may be either legal or equitable, depending on the basis for the plaintiff's claim and the nature of the underlying remedies sought." Id. (quotations and citations omitted).

"Monetary relief in the form of restitution may be considered equitable only if it 'seeks not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession.' " Id. (quoting Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 214 (2002). "Monetary damages that are compensatory in nature are traditionally considered to be legal relief because they 'focus on the plaintiff's losses and seek to recover in money the value of harm done' to the plaintiff instead of punishing 'the wrongdoer by taking his ill-gotten gains.' " Calhoon, 400 F.3d at 596 (quoting Kerr v. Charles F. Vatterott & Co., 184 F.3d 938, 944 (8th Cir. 1999); see also Slice v. Sons of Norway, 34 F.3d 630, 633 (8th Cir. 1994) ("[W]e understand 'appropriate equitable relief' to refer to equitable remedies. Such

8

remedies exclude money damages, 'the classic form of *legal* relief.' ") (emphasis in original) (quoting Mertens v. Hewitt Assoc., 508 U.S. 248, 255 (1993)).

"In determining whether the nature of the monetary relief sought is equitable or legal," the United States Court of Appeals for the Eighth Circuit looks to "whether the value of the harm done that forms the basis for the damages is measured by the loss to the plaintiff or the gain to the defendant and whether the money sought is specifically identifiable 'as belonging in good conscience to the plaintiff' and can 'clearly be traced to particular funds or property in the defendant's possession.' " Calhoon, 400 F.3d at 596 (quoting Great-West, 534 U.S. at 213). "When funds are traceable, the district court must limit the recovery by imposing a constructive trust over only the transferred funds; it may not award 'restitution of a sum certain' or find personal liability, both of which are impermissible legal remedies under 1132(a)(3)." Id. (quoting N. Am. Coal Corp. Ret. Sav. Plan v. Roth, 395 F.3d 916, 917 (8th Cir. 2005).

In this case, Ms. Plambeck attempts to categorize her theory of liability, equitable estoppel, as a form of equitable relief. However, the relief she seeks is money damages to compensate her for out-of-pocket losses associated with her surgical procedure at LSI. Defendants assert they have not improperly withheld funds that are rightfully Ms. Plambeck's or traceable to her. (Docket 33 at p. 10). Ms. Plambeck contends because defendants withheld payments to LSI, which in

9

turn were to be refunded to her, defendants are in possession of funds rightfully belonging to her.  (Docket 36 at pp. 6-7).

Ms. Plambeck makes a strained assertion regarding defendants' possession of funds rightfully belonging to her.  It is clear, however, that defendants do not possess any money which can "clearly be traced to particular funds or property" rightfully belong to Ms. Plambeck.  <u>Calhoon</u>, 400 F.3d at 596.  Ms. Plambeck does not value her damages based on any gain made by the defendants but on the amount of her loss.

It is clear Ms. Plambeck is attempting to impose personal liability on defendants for the loss to her own pocketbook.  Consequently, although Ms. Plambeck contends she relied to her detriment on Anthem's conversations with LSI regarding her out-of-pocket maximum, she cannot be compensated for the cost of surgery as that is a classic form of legal relief which the Eighth Circuit, relying on Supreme Court precedent, has consistently held cannot be sustained under § 502(a)(3) of ERISA.

Ms. Plambeck argues the perception that prior Supreme Court decisions curtailed the types of relief available under § 502(a)(3) was rejected in <u>CIGNA Corp. v. Amara</u>, 131 S. Ct. 1866 (2011).  <u>CIGNA</u> concerned "a suit by a beneficiary against a plan fiduciary (whom ERISA typically treats as a trustee) about the terms of a plan (which ERISA typically treats as a trust)."  <u>Id.</u> at 1879.  Employees filed a class action against CIGNA and their pension plan challenging

CIGNA's conversion from a traditional defined benefit pension plan to a "cash balance" retirement plan under ERISA. Id. at 1870. The employees claimed CIGNA's initial descriptions of the plan were significantly incomplete and misleading. Id. at 1872. Pursuant to § 502(a)(1)(B), the district court reformed the new plan and issued an injunction that required the plan administrator to pay already retired beneficiaries money owed to them under the plan. Id. at 1871.

The United States Supreme Court granted *certiorari* to consider whether the district court applied the correct legal standard, "namely, a 'likely harm' standard, in determining that CIGNA's notice violations caused its employees sufficient injury to warrant legal relief." Id. The Supreme Court determined the district court erred in treating summary plan descriptions ("SPDs") as though they were benefits under the plan itself and held that any misrepresentations in the SPDs were not actionable under § 502(a)(1)(B) of ERISA. Id. at 1878.

After holding § 502(a)(1)(B) did not authorize the entry of relief at issue in CIGNA, which resolved the issue before the Court, the Supreme Court went on to consider the scope of equitable relief that may theoretically be invoked under § 502(a)(3). The Court observed, "the fact that this relief takes the form of a money payment does not remove it from the category of traditionally equitable relief," as "[e]quity courts possessed the power to provide relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty, or

11

to prevent the trustee's unjust enrichment." Id. at 1880.  The Court noted this remedy, described as a "surcharge," "extended to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary." Id.  The Court observed the fact the defendant was analogous to a trustee was critical "insofar as an award of make-whole relief is concerned."  Id.  The Supreme Court did not need to discuss the § 502(a)(3) issue, however, as the lower court declined to reach it.

Notably, CIGNA did not overrule any prior Supreme Court precedent as it relates to § 502(a)(3).  Justice Scalia, in his concurring opinion, noted:

> The Court's discussion of the relief available under § 502(a)(3) and Mertens is purely dicta, binding upon neither us nor the District Court. The District Court need not read any of it – and, indeed, if it takes our suggestions to heart, we may very well reverse.  Even if we adhere to our dicta that contract reformation, estoppel, and surcharge are " 'distinctively equitable' remedies," it is far from clear that they are available remedies in this case.  The opinion for the Court does not say (much less hold) that they are and disclaims the implications.

Id. at 1884 (Scalia, J., concurring) (citations omitted).

Despite Ms. Plambeck's assertion the Supreme Court's dicta in CIGNA relating to equitable relief under § 502(a)(3) supplants Eighth Circuit case law, it is clear the Eighth Circuit continues to rely on prior Supreme Court precedent limiting relief sought under § 502(a)(3) to equitable, not legal, relief.  See Treasurer, Trs. of Drury Indus., Inc. Health Care Plan and Trust v. Goding, 692 F.3d 888, 897 (8th Cir. 2012).

In Drury, the Eighth Circuit continued to limit permissible monetary claims under § 502(a)(3) to those seeking a specifically identifiable fund and not just imposing personal liability. Id. at 896. (citing Knudson, 534 U.S. at 210; and Sereboff v. Mid. Atl. Med. Servs., Inc., 547 U.S. 356, 362-63 (2006)). Eighth Circuit precedent "is controlling until overruled by [the Eighth Circuit] en banc, by the Supreme Court, or by Congress." M.M. ex rel. L.R. v. Special School Dist. No. 1, 512 F.3d 455, 459 (8th Cir. 2008). As is relates to equitable relief available under § 502(a)(3), the Eighth Circuit does not permit relief which seeks to impose personal liability, which is an "impermissible legal remed[y]" under § 502(a)(3). Calhoon, 400 F.3d at 597.

Ms. Plambeck's action attempts to impose personal liability on defendants for the loss to her own pocketbook. Although Ms. Plambeck strives to frame her relief as equitable, what she really seeks is nothing more than compensatory damages. "Money damages are, of course, the classic form of *legal* relief." Mertens, 508 U.S. at 255 (emphasis in original).

Accordingly, it is hereby

ORDERED that defendants' motion for summary judgment (Docket 30) is granted.

Dated March 11, 2013.

                BY THE COURT:

                /s/ *Jeffrey L. Viken*
                JEFFREY L. VIKEN
                CHIEF JUDGE